IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| L.H., D.J., B.P., and J.F., on behalf of their minor children, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. ) |
| INDEPENDENCE SCHOOL DISTRICT, | ) ) ) |
| Defendant. | ) |

## COMPLAINT FOR PROSPECTIVE RELIEF

### INTRODUCTION

1. Defendant Independence School District (ISD) established, implemented, and maintains a policy of automatically removing library materials, including books, upon challenge and before any review of the challenged material has occurred or any vote has taken place (automatic-removal policy).

2. Plaintiffs L.H., D.J., B.P., and J.F., are parents and file this case on behalf of the real parties in interest, their minor children who are students at ISD schools, each of whom possesses a First Amendment right to be free from official conduct that suppresses the ideas and viewpoints contained in library materials and a right to due process of law.

3. ISD's automatic-removal policy results in the removal of challenged library materials from all ISD libraries before any review takes place based upon a complainant's opinion that the materials are objectionable in any manner, including where the complaint is based on dislike for the ideas and viewpoints expressed.

4. ISD students are not notified of the removal when it occurs and there is no requirement that students or parents ever be notified of a removal.

5. In addition to no notice, there is no opportunity to appeal the Board of Education's final decision related to the removal.

6. ISD has enforced this policy and removed books from school libraries based on objections to the ideas and viewpoints expressed and the policy remains in place.

7. Prospective relief is necessary and appropriate to halt ISD's use of the automatic-removal policy and the resulting ongoing violation of Plaintiffs' constitutional rights to receive the information and access the ideas contained in library materials, including books, and to be provided due process of law.

## PARTIES

8. Plaintiff L.H. brings these claims on behalf of their minor child who is a student at an ISD school, all of which provide students access to a school library. L.H.'s child intends to use the library and access its materials and fears that the materials they wish to have access to will be automatically removed upon any challenge, without notice or an opportunity to appeal.

9. Plaintiff D.J. brings these claims on behalf of their minor child who is a student at an ISD school, all of which provide students access to a school library. D.J.'s child intends to use the library and access its materials and fears that the materials they wish to have access to will be automatically removed upon any challenge, without notice or an opportunity to appeal.

10. Plaintiff B.P. brings these claims on behalf of their minor children who are students at ISD schools, all of which provide students access to a school library. B.P.'s children intend to use the library and access its materials and fear that the materials they wish to have access to will be automatically removed upon any challenge, without notice or an opportunity to appeal.

11. Plaintiff J.F. brings these claims on behalf of their minor child who is a student at an ISD school, all of which provide students access to a school library. J.F.'s child intends to use the library and access its materials and fears that the materials they wish to have access to will be automatically removed upon any challenge, without notice or an opportunity to appeal.

12. Plaintiffs' minor children include students who attend elementary, middle, and high schools within ISD.

13. Defendant ISD is a school district that provides public education to school-aged students in Independence, Jackson County, Missouri. ISD is a public school system organized and maintained under the laws of the State of Missouri. ISD has a student population of more than 14,000 students in grades pre-K–12. All actions described herein were taken pursuant to ISD policies, practices, and procedures.

## JURISDICTION AND VENUE

14. This action arises under the U.S. Constitution and the provisions of 42 U.S.C. § 1983.

15. This case presents a federal question within this Court's jurisdiction under Article III, § 2, of the U.S. Constitution, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343(a) (civil rights).

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which Defendant is located and where substantially all the events or omissions giving rise to the claim occurred.

17. Venue is proper in the Western Division of this Court pursuant to Local Rule 3.2(1) because Defendant is located in Jackson County and substantially all the events or omissions giving rise to the claim occurred in Jackson County.

## FACTUAL ALLEGATIONS

### *ISD*

18. Missouri has more than 2,400 public schools, which are organized into 567 public school districts.

19. ISD is one of those school districts.

20. ISD is governed by a seven-member Board, whose members are chosen in at-large elections.

21. The Board makes policy for ISD and is a final decisionmaker on how policies are interpreted and implemented.

### *ISD's Policies and Regulations*

22. ISD's policies for the selection, retention, and reconsideration of materials in ISD libraries are set forth in ISD's Board Policies and Regulations.

23. Board Regulation 6310 (attached hereto as **Exhibit 1**) describes the responsibilities and guiding principles of ISD's libraries, which are "concerned with generating understanding of American freedoms through the development of informed and responsible citizens" and based on the American Library Association's "Library Bill of Rights." Among the responsibilities outlined in Board Regulation 6310 are ensuring "maximum accessibility" to materials and providing materials "that will encourage growth in knowledge, and that will develop literary, cultural and aesthetic appreciation, and ethical standards," and "which reflect the ideals and beliefs of religious, social, political, historical, and ethnic groups and their contribution to American and world heritage and culture, thereby enabling students to develop an intellectual integrity in forming judgments."

24. Board Regulation 6310 outlines the following selection criteria for library materials:

   1. Importance and Need of Subject Matter

   2. Intended Age Level and Comprehensibility

   3. Potential User Appeal

   4. Quality and Durability

   5. Authoritativeness

   6. Price.

25. Board Regulation 6310 provides that the school librarian makes the final selection decision based on these criteria, with approval of the school principal.

26. Board Regulation 6310 allows a student, parent, or guardian to make a formal complaint against library materials they find "objectionable in any manner" by obtaining a form from the Superintendent's office: Form 6241 - Review of Instructional Materials.

27. Board Regulation 6310 refers to Board Policy and Regulation 6241.

28. Board Policy 6310 (attached hereto as **Exhibit 2**) provides that "[t]he Board believes that it is the responsibility of ISD's library/media centers to provide materials that reflect the ideals and beliefs of religious, social, political, historical and ethnic groups, and their contributions to American and world cultures."

29. Board Policy 6310 also recognizes that "[t]he library/media program serves as a point of access to information and ideas for students as they acquire critical thinking and problem-solving skills."

30. Board Policy 6241 (attached hereto as **Exhibit 3**) establishes the guidelines for the consideration of challenged materials, including:

    a. "The Board has the ultimate responsibility for establishing the curriculum and for purchasing instructional and/or media materials to be used in the District."

    b. "Instructional materials shall not be excluded on the basis of the writer's racial, nationalistic, political, or religious views."

    c. "Books, or other instructional or media materials of sound factual authority, shall not be prescribed, nor removed from library shelves or classrooms on the basis of partisan or doctrinal approval or disapproval."

    d. "If a challenge is made, it should be properly channeled through guidelines and procedures established by the Board."

31. Board Regulation 6241 (attached hereto as **Exhibit 4**) establishes the guidelines and procedures established by the Board that are followed for challenged materials, including challenged books, as follows:

    i. The of the complaint is reported "immediately" to the school principal, regardless of how the complaint is received (e.g., phone, letter, or personal conference).

    ii. A form (Form 6241) titled "Review of Instructional Materials" is then provided to the person making the complaint.

    iii. The form is to be completed and returned by the person objection to the library material.

iv. The material "questioned will be removed from use,"[1] pending committee review and a final Board vote, "unless the material questioned is a basic text."

v. Within 15 days of receiving the written complaint, the Superintendent appoints a review committee of nine people, consisting of one Board member, the building administrator, three teachers, and four lay persons.

vi. The appointed teachers to the review committee "shall be represented by the grade level or subject area where the media is used, another grade level or subject area, and a librarian."

vii. The four lay persons are "selected from a list of eight people recommended to the Superintendent by the President of the Board[,]" and two of the four "must be parents/guardians of children in the schools."

viii. Within 20 days of being appointed, the committee meets and reviews the complaint, reads the objected to material, evaluates the material, and prepares a written report of its findings and recommendations to the Superintendent;

ix. The committee can recommend that the objected to material be: (a) retained without restriction; (b) retained with restriction; or (c) not retained.

---

[1] This is the automatic-removal policy challenged herein. And, while Board Regulation 6310 provides that the Superintendent and the librarian will consider a written complaint "in weighing the educational value of that particular book, filmstrip, etc., against the segment found objectionable to the complainant. Contingent with their decision, the material will be returned to the shelf for continued use, or removed from library circulation," it is the automatic-removal policy that is triggered upon receipt of a complaint and Board Regulation 6310 refers to Board Policy and Regulation 6241.

x. At the next appointed meeting of the Board, the Superintendent shall then report the recommendations of the committee. The decision of the Board is final.

xi. The Board decision is then reported to the school principal, to the complainant, "and to other appropriate professional personnel on the next school day." It is the principal's role to see that the Board decision is carried out.

xii. The school librarian keeps "on file all pertinent information concerning the questioned materials or any books or materials likely to be questioned."

32. There is no notice to students or parents that a book has been challenged and no mechanism for appealing the final Board decision to remove a book.

33. If a book is challenged, it is removed from all ISD libraries pending review and a final Board vote.

34. The automatic-removal policy allows books to be removed on any basis stated in the objection, including because of the viewpoints expressed in the material.

35. The automatic-removal policy has been enforced by ISD.

36. On April 25, 2022, a complaint was submitted to ISD raising objections to the book *Cats vs. Robots #1: This Is War*. A chapter book intended for children who are in elementary and middle school.

37. The objection to the book was stated as only "Non-Binary discussion – chapter."

38. Any discussion in the book about a non-binary character occurs on three pages (57-59) of a 307-page book.

39. Consistent with ISD's automatic-removal policy, the book was removed from all library shelves upon receipt of the complaint, pending committee review and recommendation and a Board vote.

40. No consideration of the basis of the complaint was made before the book was removed.

41. The review committee was appointed on or about May 17, 2022, one week after the deadline for appointment, which would have been on May 10, 2022 (15 days after the complaint was submitted on April 25, 2022).

42. The review committee met first on May 25, 2022, and then again on June 5, 2022.

43. On June 6, 2022, the committee provided its report and recommendation to the Superintendent.

44. On June 14, 2022, the Board voted to permanently ban the book *Cats v. Robots # 1: This Is War*, from elementary school libraries.

45. The automatic-removal policy, as written and applied by ISD officials, would allow any parent, guardian, or student to make *any* objection thereby triggering the removal of a book as the committee is established, reviews the material, makes a recommendation, and then the Board holds a formal vote.

46. Indeed, the *Cats v. Robots # 1: This Is War* review committee stated a belief that there would be more challenges to books.

47. Any departures from written policy described herein have been made or ratified by the Board such that those departures constitute the policy of ISD.

48. Plaintiffs also believe that there will be additional challenges to books triggering the automatic-removal policy.

49. During the 2021-22 school year, 138 school districts in 32 states removed more than 2,500 books.

50. Books are frequently challenged because they contain references to sex, sexuality, or sexual themes, and challengers will incorrectly refer to these materials as "pornography."

51. Books written by or about minority, lesbian, gay, bisexual, transgender, or queer (LGBTQ) individuals are more frequently challenged on this basis than books by or about white or straight individuals.

52. Under ISD's automatic-removal policy, a parent, guardian, or student who objects to a book because it contains a discussion about "sex," a person's "sexuality," or their "race" would trigger that book's automatic removal from all library shelves pending review and a Board vote.

53. Forty-one percent of all books banned nationwide in the 2021-2022 school year were about LGBTQ characters. That includes 671 titles that explicitly address LGBTQ themes or feature protagonists or prominent secondary characters who are part of the LGBTQ community. About 9 percent of these removals—or 145 titles—targeted transgender characters and their stories.

54. Titles that contain protagonists or important secondary characters of color were accounted for 40 percent of all book removals in the 2021–2022 school year, or 659 unique removed titles.

55. Finally, 338 titles directly address issues of race and racism, making up 21 percent of all book removals in the 2021–2022 school year.

56. While Board Policy 6241 states that "[i]nstructional materials shall not be excluded on the basis of the writer's racial, nationalistic, political, or religious views," and that

"[b]ooks, or other instructional or media materials of sound factual authority, shall not be prescribed, nor removed from library shelves or classrooms on the basis of partisan or doctrinal approval or disapproval," ISD policies nevertheless requires the automatic removal of a book upon a challenge and require only that the person complaining state that it is "objectionable in any manner."

57. ISD does not have a formal policy that allows parents to inform their child's school that they do not wish for their child to have access to a particular book.

58. In other words, if a parent decides a book is not appropriate for their child, the only option is to challenge the book under the automatic-removal policy, as was done with *Cats v. Robots #1: This Is War*, thereby triggering automatic removal pending review followed by a final, unappealable decision for all students.

59. ISD also has no formal policy of informing parents that a book has been automatically removed following a complainant's objection.

60. Parents may learn about the removal of a book for the first time only after the Board's final, unappealable decision as to that book; however, there is also no requirement that parents, other than one who complains, be informed at all.

61. ISD students, including Plaintiffs' children, face the threat of future harm resulting from the automatic-removal policy and future challenges to books that, absent prospective relief, will cause the books to be automatically removed from ISD libraries pending review and a Board vote and will allow no pre-removal notice or post-removal appeal of the final Board decision.

# COUNT I

*The automatic-removal policy violates the First Amendment*
*42 U.S.C. § 1983*

62. Plaintiffs re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

63. The automatic-removal policy results in the removal of all student access to all challenged materials, including where removals are made without merit and on the basis of viewpoint and content.

64. A single complaint by one person results in an automatic removal of the challenged material under the automatic-removal policy from all libraries.

65. The automatic-removal policy allows removals which have the symbolic effect of removing ISD's imprimatur from the removed materials and the intent, purpose, and effect of prescribing what is generally or traditionally right or true in matters of opinion.

66. The automatic-removal policy violates the First Amendment rights, applicable by incorporation under the Fourteenth Amendment, of Plaintiffs by restricting their access to ideas and information for an improper purpose.

67. The automatic-removal policy results in ISD preventing students who might wish to access the books from doing so while stigmatizing the ideas and viewpoints expressed by the challenged materials.

68. Automatic removal of challenged materials threatens the ability of the Plaintiffs to learn and engage with a diversity of ideas and information, including seeing their own experiences reflected in the books and developing greater understanding of the experiences of others.

69. ISD's enforcement of its policy and the automatic removal of books from school libraries pursuant to it and the ongoing challenges to books at ISD libraries presents a credible threat that additional books will also be removed based on their viewpoints.

70. Unless enjoined by this Court, ISD will continue to violate the First and Fourteenth Amendment rights of Plaintiffs' children by maintaining and continuing to utilize a policy to automatically remove materials from circulation based upon any one person's challenge to the material, before it is reviewed or a Board vote has occurred, based solely on the complainant's objection to the content of the material.

## COUNT II

*The automatic-removal policy violates due process*
*42 U.S.C. § 1983*

71. Plaintiffs re-allege and incorporate by reference all of the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

72. ISD's automatic removal policy fails to give students fair notice of a challenge to library material or the automatic removal of that material that the policy triggers.

73. The automatic-removal policy also fails to provide any mechanism to participate in the review process or appeal the removal of library material after the committee presents its recommendation and the Board votes.

74. ISD's automatic-removal policy constitutes a pre-notice and pre-hearing deprivation of rights.

# PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Court grant the following relief:

a) Upon motion, enter a preliminary injunction directing Defendant to cease enforcing its policy of automatically removing materials upon challenge in violation of students' First and Fourteenth Amendment right to access ideas and information and due process, and provide such other and further interim relief as is warranted by the evidence and law until further order of this Court;

b) A permanent injunction and corresponding declaratory judgment;

c) An award of Plaintiffs' attorney fees, pursuant to 42 U.S.C. § 1988, and taxable costs;

d) Such other and further relief as is proper under the circumstances.

Respectfully submitted,

/s/ Gillian R. Wilcox
Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112
jsteffan@aclu-mo.org

*Attorneys for Plaintiffs*

Certificate of Service

I certify that a copy of the foregoing was served on the Independence School District by special process server.

/s/ Gillian R. Wilcox