IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **L.H., et al.,** | |
| **Plaintiffs,** | |
| v. | **Case No. 4:22-cv-00801-RK** |
| **Independence School District,** | |
| **Defendant.** | |

**SUGGESTIONS IN OPPOSITION TO**
**MOTION FOR PRELIMINARY INJUNCTION**

Defendant Independence School District, by and through undersigned counsel, provides the following Suggestions in Opposition to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs' request for injunctive relief focuses on speculative hypothetical and mischaracterized concerns, and wholly fails to demonstrate that Plaintiffs are likely to prevail on the merits, that Plaintiffs will be irreparably harmed, or that the balance of equities or the public interest favors Plaintiffs. In opposition to Plaintiffs' Motion for Preliminary Injunction, Defendant provides the following suggestions.

1

# I. Table of Contents

Table of Contents .................................................................................................................. 2

Table of Authorities ............................................................................................................. 3

Suggestions in Opposition .................................................................................................... 5

    I.    Introduction ................................................................................................................ 5

    II.   Standard of Review .................................................................................................... 7

    III.  Argument ................................................................................................................... 9

        A.  Plaintiffs Have Not Demonstrated a Fair, Much Less a Substantial, Chance of Prevailing on the Merits. ............................................................................................ 9

        B.  Plaintiffs Have Not Demonstrated Irreparable Harm. ................................................ 14

        C.  The Balance of Equities and Public Interest Favor Defendant. .................................. 16

    IV.  Conclusion ................................................................................................................ 17

## II. Table of Authorities

**Cases**

*ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009) ........................................................................................... 6, 10

*Altria Grp., Inc. v. Good*,
  555 U.S. 70 (2008) ..................................................................................................................... 10

*Ambach v. Norwick*,
  441 U.S. 68 (1979) ....................................................................................................................... 9

*Bd. of Educ. v. Pico*,
  457 U.S. 853 (1982) .......................................................................................... 8, 9, 10, 11, 16, 17

*Bible Believers v. Wayne Cty.*,
  805 F.3d 228 (6th Cir. 2015) ...................................................................................................... 13

*C.K.-W v. Wentzville R-IV Sch. Dist.,* No. 4:22-cv-00191-MTS,
  2022 U.S. Dist. LEXIS 139554 (E.D. Mo. Aug. 5, 2022) .................. 6, 7, 10, 12, 13, 14, 16, 17

*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005) ...................................................................................................... 10

*Dakota v. Rounds*,
  530 F.3d 724 (8th Cir. 2008) ........................................................................................................ 7

*Dataphase Sys. v. C L Sys.*,
  640 F.2d 109 (8th Cir. 1981) ........................................................................................................ 7

*Epperson v. Arkansas*,
  393 U.S. 97 (1968) ....................................................................................................................... 8

*Forsyth Cty. v. Nationalist Movement*,
  505 U.S. 123 (1992) ................................................................................................................... 13

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  484 U.S. 260 (1988) ................................................................................................................ 9, 14

*Muir v. Ala. Educ. Television Comm'n*,
  688 F.2d 1033 (Former 5th Cir. 1982) ....................................................................................... 10

*Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*,
  413 U.S. 376 (1973) ................................................................................................................... 14

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
   530 F.3d 724 (8th Cir. 2008) .................................................................................................. 8

*Reeder v. Kansas City Bd. of Police Comm'rs*,
   796 F.2d 1050 (8th Cir. 1986) ............................................................................................. 17

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019) ................................................................................................. 7

*Sund v. Cty. of Wichita Falls*,
   121 F. Supp 2d 530 (N.D. Tex. 2000) ................................................................................. 13

*Watkins Inc. v. Lewis*,
   346 F.3d 841, 844 (8th Cir. 2003) ......................................................................................... 7

### III. Suggestions in Opposition
### IV. Introduction

Plaintiffs' quotation from *Mahanoy* reflects a misunderstanding of the very maxim they seek to rely upon. Independence School District (the "District") has not prevented any of its students from saying anything (or otherwise expressing themselves) in this matter. Rather, it is Plaintiffs who have openly announced their intent (and called upon the Court) to override the broad discretion of the District's democratically elected (and accountable) Board of Education (the "Board") in effectuating its educative mission as a public school district and then compel the District to affix its seal and "imprimatur" of approval to certain forms of expression in its own libraries. *See* Doc. 1, ¶ 65. Plaintiffs' asserted right of access to information in school libraries is not as established, and certainly not as well defined, as they claim. Even granting the existence of such a right, Plaintiffs' own Motion for Preliminary Injunction (Doc. 8) fails to demonstrate the existence of any credible threat of irreparable harm to Plaintiffs in the absence of injunctive relief.

As of the filing of these Suggestions, the District has received a formal challenge to just a single book: *Cats vs. Robots #1: This Is War* (hereafter, *Cats vs. Robots*). *See* Ex. 1, Affidavit of Dr. Dale Herl, ¶ 4. Plaintiffs do not challenge the decision that resulted from the committee and Board review of that book, but instead limit their challenge to the policy for temporarily removing a book from school libraries while the challenged material is reviewed. The only challenge referenced was put forth by the parent of a third-grader, who had checked out the book from his elementary school library. *See* Doc. 8-5, pp. 1, 6. The parent indicated that the book, which contained a chapter discussing the concept of non-binary gender identity, was not age appropriate for elementary school students. *See id.*

Upon receipt of the challenge, the District followed Board Policy 6241. Ex. 1, ¶ 7. Pursuant to Policy 6241, a review committee was formed, consisting of a Board of Education member, the building administrator, three teachers, and four lay persons. *See id*, ¶ 8. Minutes of the committee's review meeting, and its subsequent report, reflects thoughtful and careful consideration of their decision, including the potential unintended consequences of their decision. *See* Doc. 8-5, pp. 2-8.

After a careful review of the material, the committee recommended that the book not be retained in elementary school libraries, but would remain without restrictions in middle school and high school libraries. *See* Doc. 8-5, pp. 6-8. The committee's recommendation was presented to the Board of Education, which voted to accept and implement the committee's recommendation. *See* Doc. 8-6, p. 12. Here, Plaintiffs' claims are speculative, at best, because they do not challenge the decision on *Cats vs. Robots*, and only point to hypothetical future challenges to books.

The District has not "banned" any books. The District's decision was merely to restrict the challenged book by limiting its retention to middle school and high school libraries. The District's decision was reasonable and sensible given the book's discussion of non-binary gender identity, which many parents will consider to be an inappropriate discussion for elementary-aged children. An effectively identical policy was challenged by parents, also represented by the ACLU, in *C.K.-W v. Wentzville R-IV Sch. Dist.*, where Judge Matthew T. Schelp of the United States District Court for the Eastern District of Missouri, stated:

> The District's policy does not ban the District's students from reading the books at issue here. Nor does it ban students from acquiring the books or lending the books to others. Students may borrow the books from the public library or from a friend or neighbor. They likewise are free to purchase the books. The policy does not even ban students from bringing the books at issue to the District's schools. Nor does it ban students from discussing the books at school during their free time or encouraging others to read them.
>
> …
>
> A school district does not "ban" a book when, "through its authorized school board," it "decides not to continue possessing [a] book on its own library shelves."

*C.K.-W v. Wentzville R-IV Sch. Dist.,* No. 4:22-cv-00191-MTS, 2022 U.S. Dist. LEXIS 139554 at *3-4 (E.D. Mo. Aug. 5, 2022) (quoting *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1218 (11th Cir. 2009)) (Ex. 2).

6

Likewise, here, the District's decision was merely to limit *Cats vs. Robots* to its middle school and high school libraries. The District has not banned students from reading *Cats vs. Robots*. *See* Ex. 1, ¶ 11. Nor has it banned students from acquiring the book or lending the book to others. *See id.*, ¶ 12. Students may borrow the book from the public library or from a friend or neighbor. *See id.*, ¶ 13. They likewise are free to purchase the book. *See id.*, ¶ 14. The policy does not even ban students from bringing the book at issue to the District's schools. *See id.*, ¶ 15. Nor does it ban students from discussing the book at school during their free time or encouraging others to read them. *See id.*, ¶ 15.

Plaintiffs' pleadings make clear that the crux of their claims is not even about the lone book being restricted, but on the policy itself. Plaintiffs complain that when a book is challenged, it is temporarily removed pending the District's review of the challenged book pursuant to Board Policy 6241. On its face, Plaintiffs' complaint is without merit. It is patently reasonable for the District to temporarily restrict a book in order to give it time to review the material to determine if it is indeed appropriate or inappropriate for its students. Moreover, Plaintiffs' purported fear that books will be frequently and unfairly challenged and withheld from students is demonstrably unfounded. Since Policy 6241 was implemented in December 2012, there has been a single challenge to a single book. *See* Ex. 1, ¶ 4. In these Suggestions, Defendant will demonstrate that Plaintiffs have not, and cannot, show that the drastic remedy of a preliminary injunction is warranted in this case and the Court should therefore deny the same.

## V. Standard of Review

The granting of a preliminary injunction is an "extraordinary remedy," and the movant bears the burden of establishing the propriety of an injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). In deciding a motion for a preliminary injunction, the district court evaluates: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Id*. In weighing the factors,

7

"no single factor is determinative." *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). "[A] preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits, even in First Amendment cases, and the district court must still consider the other factors …." *Rodgers v. Bryant*, 942 F.3d 451, 466 (8th Cir. 2019) (internal citations and quotations omitted). The adjudication of a motion for preliminary injunction is subject to review for abuse of discretion. *Watkins Inc.*, 346 F.3d at 841.

As an initial matter, Plaintiffs assert that they need only show that they have a "fair chance" of prevailing on the merits, a less rigorous showing than the "likely to prevail on the merits" showing, which is required when a party seeks to enjoin "government action based on presumptively reasoned democratic processes." *See Planned Parenthood Minn., N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). In *C.K.-W*, which again, involved a challenge to the exact Board Policy language at issue, here, the Eastern District suggested that the "likely to prevail on the merits" standard may be the appropriate standard: "At issue here, however, are policies enacted by a democratically elected board of education." *C.K.-W*, at *11. Ultimately, the Eastern District evaluated the challenge under both standards, primarily because the Defendant did not argue for the more stringent standard, but also because the Court found that Plaintiffs' similar challenge failed under even the less stringent standard.

In this case, Defendant asserts that the more stringent "likely to prevail on the merits" is the appropriate standard. Policy 6241 was formally enacted, with notice and comment, by a democratically elected Board of Education. As such, Policy 6241 is a "government action based on presumptively reasoned democratic processes," and therefore entitled to greater protection. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). On that standard, Plaintiffs' challenge plainly fails. However, Defendants will demonstrate Plaintiffs have failed to meet even the less rigorous "fair chance" standard.

## VI. Argument

### A. Plaintiffs Have Not Demonstrated a Fair, Much Less a Substantial, Chance of Prevailing on the Merits.

#### i. The District Has Broad Discretion to Formulate Educational Policy and To Review Challenged Materials Consistent with Their Policies.

The U.S. Supreme Court has "long recognized that local school boards have broad discretion in the management of school affairs," subject to constitutional bounds. *Bd. of Educ. v. Pico*, 457 U.S. 853, 863-64 (1982) (citing *Meyer v. Nebraska*, 262 U.S. 390, 402 (1923) (plurality opinion); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534 (1925); *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)) (plurality opinion). Indeed, "[b]y and large, public education in our Nation is committed to the control of state and local authorities." *Epperson*, 393 U.S. at 104. "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Id*. The Supreme Court has further acknowledged public schools as vehicles for "inculcating fundamental values necessary to the maintenance of a democratic political system," that ought to be afforded substantial discretion in accomplishing this mission, particularly with respect to matters of curriculum. *See Pico*, 457 U.S. at 864, 869 ("We are therefore in full agreement with petitioners that local school boards must be permitted to establish and apply their curriculum in such a way as to transmit community values, and that there is a legitimate and substantial community interest in promoting respect for authority and traditional values be they social, moral, or political." (Internal citations and quotations omitted)) (plurality);[1] *Ambach v. Norwick*, 441 U.S. 68, 76-77 (1979). While it is well-settled that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," it is similarly axiomatic that the First Amendment rights of such students are not "automatically coextensive with the rights of adults"

---

[1] *See id*. at 889 ("If, as we have held, schools may legitimately be used as vehicles for inculcating fundamental values necessary to the maintenance of a democratic political system, school authorities must have broad discretion to fulfill that obligation." (Internal citations and quotations omitted)) (Burger, C.J., dissenting, joined by Powell, Rehnquist, and O'Connor, JJ.).

and must be applied "in light of the special characteristics of the school environment." *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266 (1988) (internal citations and quotations omitted).

### ii. The Precedential Value and Standard of the Supreme Court's Plurality Opinion In *Pico* Is Suspect.

It cannot be ignored that the highest authority in the land on the interpretation of the law was sharply divided and unable to reach a majority consensus in the first and only case wherein it analyzed the constitutionality of a school board's removal of books from a school library. *See generally*, *Pico*, 457 U.S. 853 (plurality). Four of the Justices found that students had some degree of a First Amendment right to access information in public school libraries (two joining the lead opinion and one concurring). *Id.* at 855-82. One Justice concurred only in the judgment, opining that it was not necessary (and thus not proper) at that point to decide the "difficult" and "largely uncharted" First Amendment issues raised by the case. *Id.* at 883-84 (White, J., concurring in the judgment). The remaining four Justices expressly rejected the existence of any student right to receive information from third parties via the school district,[2] characterizing the plurality opinion as a "lavish expansion going beyond any prior holding under the First Amendment"[3] and reasoning (compellingly in the District's view) that (*inter alia*):

> If the school board can set the curriculum, select teachers, and determine initially what books to purchase for the school library, it surely can decide which books to discontinue or remove from the school library so long as it does not also interfere with the right of students to read the material and to discuss it.

*Id.* at 921 (O'Connor, J., dissenting). It is well established that a plurality opinion is not binding precedent. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 96 (2008). Indeed, other circuits have questioned whether *Pico* has any precedential value at all. *See ACLU of Fla., Inc*, 557 F.3d at 1200; *Chiras v. Miller*, 432 F.3d 606, 619 n. 32 (5th Cir. 2005); *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1045 n.30 (Former 5th Cir. 1982) (en banc) (plurality opinion of Hill, J.); see also *C.K.-W*, at *14 ("Indeed, it is not clear what, if anything, from *Pico* is binding on the case here.").

---

[2] *Id*. at 885-93 (Burger, C.J., dissenting, joined by Powell, Rehnquist, and O'Connor, JJ.).
[3] *Id*. at 885 (Burger, C.J., dissenting, joined by Powell, Rehnquist, and O'Connor, JJ.).

Finally, the facts of this case further limit *Pico*'s applicability (if any) to the present case, as *Pico* dealt with the permanent removal of school library books following committee review and Board vote. 457 U.S. at 857-58. Here, the Board has not voted to permanently remove any book. Thus far, it has only voted to restrict a single book to middle school and high school libraries based on age-appropriate considerations. Moreover, Plaintiffs have made clear that their challenge is not to the restricted book itself, but only to the temporary removal pending review of the book under Policy 6241. In light of these factors, the District submits that the unsettled nature of the law in this area and the nebulousness of Plaintiffs' asserted right, on its own, militate against a finding of even the less rigorous "fair chance" of prevailing on the merits in this case.

> iii. **Even applying *Pico*, Plaintiffs have not sufficiently demonstrated a likelihood that the District has or will remove any material because of a mere dislike of the ideas expressed therein.**

The plurality opinion in *Pico* concluded that "local school boards may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." 457 U.S. at 872 (internal citations and quotations omitted). However, it also acknowledged that school districts could remove library books that were vulgar or educationally unsuitable. *Id*. at 871. Even assuming *arguendo* that Plaintiffs do possess some right to require the District to provide them access to third party materials via school libraries (which is not conceded) and that *Pico*'s plurality standard governs the scope of that right (which, again, is dubious), the "facts" proffered thus far do not sufficiently establish any racial or sexual "dislike" on the part of the Board — or even by the book challenger. Rather, Plaintiffs call upon the Court to impose the extraordinary measure of a preliminary injunction on the basis of a convoluted series of speculative and unsubstantiated aspersions by which Plaintiffs erroneously seek to impute some nefarious motive to the District, the lone challenger to the book at issue, and to hypothetical future challengers. Plaintiff's motion only relates to those wholly speculative and hypothetical future challenges.

### a. The District's book review and removal processes are not standardless.

District Policy 6241 (Doc. 8-3) explicitly articulates what is self-evident about the District's policies and regulations—they should be read *in pari materia*. ("If a challenge is made [to materials], it should be properly channeled through guidelines and procedures established by the Board."). While Regulation 6241 (Doc. 8-4) permits challenges on "any basis" and provides that challenged media will be removed pending committee review and board vote (unless it is a "basic text"), this is not the standardless procedure Plaintiffs attempt to tar it as[4]. Board Policy 6240, in addition to establishing various principles for the selection of instructional materials, provides that "materials shall not be excluded on the basis of the writer's racial, nationalistic, political, or religious views…nor removed from library shelves or classrooms on the basis of partisan or doctrinal approval or disapproval." Policy 6241 (Doc. 8-4). Policy 6310 further provides that "[s]election of and access to library/ media materials will be based upon the contribution to the education program and the age appropriateness of the materials." (Doc. 8-2). Additionally, Regulation 6241 sets out a general timeline for the challenge process — fifteen school days from receipt of challenge to form a review committee and then twenty school days from committee formation to meet and prepare a written report which is subsequently presented to the Board at the next Board meeting. (Doc. 8-4).

Moreover, contrary to Plaintiffs' suggestions, the temporary removal under Policy 6241 – regardless of the intent on the part of a hypothetical challenger, is viewpoint neutral:

> A policy that requires the temporary removal of *any* material anytime the District receives a complaint (which people of any race, religion, gender, sexual orientation, and political or world view may file) necessarily would *not* impute a motive on the District. When the District temporarily removes all complained-of books, and does so evenhandedly, it necessarily cannot be removing them with the intent to deny students access to ideas with which the District disagrees.

*C.K.-W*, 2022 U.S. Dist. LEXIS 139554. (Ex. 2.)

---

[4] Regulation 6241 itself also contemplates challenges based on "honest differences of opinion."

## b. The District's Policy of Temporarily Removing Books Pending Committee Review Is Constitutional.

### 1. The District Has Not Created a "Heckler's Veto."

The "heckler's veto" scenario contemplates a situation where the government silences a speaker to appease the crowd and stave off a potentially violent altercation. *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992); *Bible Believers v. Wayne Cty*., 805 F.3d 228, 234 (6th Cir. 2015). Plaintiffs have not and cannot demonstrate that the lone temporary book removal (and subsequent partial restriction) was motivated by some reactionary fear or pressure arising from the anticipated disruption by a hostile mob in response to "speech." To the contrary, the lone book was challenged by a parent, and the District processed the challenge pursuant to longstanding policy 6241. Plaintiffs' reliance on *Sund v. Cty. of Wichita Falls*, 121 F. Supp 2d 530, 549 (N.D. Tex. 2000), is misplaced. Unlike the procedure at issue in *Sund*., the submission of a formal challenge under District policy is not the end-all-be-all as to its status and the accompanying temporary cessation of access is not a judgement of the material's acceptability— again the purpose is for the District, via committee and board vote, to review the material in accordance with its policies and educational mission. This not only distinguishes this case from *Sund*., but from the other book removal decisions Plaintiffs rely upon. Perhaps more importantly, the court in *Sund*. addressed restrictions for a public library and specifically made the distinction that public school libraries have "inculcative" functions not possessed by public libraries. *Id*.

In *C.K.-W*, the Eastern District of Missouri, examining a nearly identical policy, rejected the ACLU's argument that the policy constituted a heckler's veto, reasoning:

> Plainly, that is not what is happening here. This is the case of the government (in the form of a school district) temporarily removing access to particular materials to determine whether they are appropriate for children. In doing this, it is not banning protected speech. And no one argues it removed these books because it feared they would provoke a violent response. This is not a case of a heckler's veto.

*C.K.*-W, 2022 U.S. Dist. LEXIS 139554, at *26. (Ex. 2.)

13

### 2. The District Has Not Imposed an Unconstitutional Prior Restraint.

"The special vice of a prior restraint is that **communication** will be suppressed, either directly or by inducing excessive caution in the **speaker**, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 390 (1973) (emphasis added). Here again, the District reiterates it has not prohibited any expressive conduct by Plaintiffs—at most the District has declined to engage in the speech Plaintiffs apparently seek to compel (*see* Doc. 6, ¶ 127). Additionally, the District notes that, in a number of Plaintiffs' relied upon authorities, at issue was insufficient notice of what speech the restraint made punishable (*see e.g.*, *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70-71 (1963)), and all of the cases involved restrictions on expressive conduct outside of the unique school context—annoying other people on a sidewalk or street corner, marching in parades, gathering in assemblies, holding demonstrations, issuing publications, etc. (*see* Doc. 19, p. 10). Here, Plaintiffs are not compelled to discern whether expressive conduct is or is not prohibited under the threat of punishment.

Plaintiffs have not demonstrated that Policy 6241 creates (or risks creating) a prior restraint on free speech. "And even if this policy were a prior restraint, Plaintiffs have not demonstrated why it would be unconstitutional, as prior restraints on speech are not always unconstitutional in a public school setting." *C.K.-W*, 2022 U.S. Dist. LEXIS 139554, at *27 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 268-69, 108 S. Ct. 562, 568 (1988); *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist*., 200 F.3d 1128, 1134 (8th Cir. 1999)) (Ex. 2).

### B. Plaintiffs Have Not Demonstrated Irreparable Harm.

As Plaintiffs have not fulfilled their burden to establish a sufficient likelihood of a Constitutional violation, they cannot demonstrate any irreparable harm arising from the same. Even accepting Plaintiffs' claims at face value, their Motion still fails to show any credible threat of irreparable harm in the absence of a preliminary injunction.

As an initial matter, not a single declaration by any of the minors – the real parties in interest – has been presented. Rather, *their parents*[5] merely attest that they would like, and their children would like, "to have access all books in the ISD library." (Docs 8-7 through 8-10). They do not challenge the restriction of the one book referenced, but instead speculative instances that have not occurred. Taking Plaintiffs' statement at face value, there is no suggestion that the students do not have access to "all books in the ISD library." Presumably, they do. If, instead, the parents and their children are indicating they wish to have access to "all books" in the ISD libraries, that is obviously non-sensical. ISD libraries do not, and cannot, house all books. This would be both a logistical impossibility, and we would assume, even the parents in this case would not like their children to have unrestricted access to all books, irrespective of their content.

As set forth previously, in the ten years that Policy 6241 has been in place, the District has received a single challenge to a single book. After careful review, the District's Board did not even vote to permanently remove that book from its libraries. Instead, the Board voted to restrict the book to middle school and high school libraries, where the content was age appropriate. Even if other books are challenged, and they are temporarily removed, the mere fact that Plaintiffs' children will *temporarily* be unable to check out those books from ISD libraries is not irreparable

---

[5] Plaintiffs acknowledge that Plaintiffs' children are the proper parties in interest. However, they assert that under Rule 17(b), they can assert these claims on their children's' behalf. However, "[u]nder Rule 17(b) of the Federal Rules of Civil Procedure, an individual's capacity to sue is determined by the individual's domicile. *Flowers v. United States*, No. 17-01028-CV-W-LMC, 2020 U.S. Dist. LEXIS 189682, at *3 (W.D. Mo. Oct. 13, 2020) (citing Fed. R. Civ. P. 17(b)(1)). In Missouri, "[s]uits by infants may only be commenced and prosecuted, either: First, by a duly appointed guardian or conservator of such infant; or, second, by a next friend appointed for him in such suit; or, third, if asserted by counterclaim, by a guardian ad litem." Mo. Rev. Stat. § 507.110. "This Court has previously noted that **'[e]ven a child's parent must be judicially-appointed to serve as the minor's representative.'"** *Elmore v. Mansfield*, No. 3:11-CV-5088-DGK, 2013 U.S. Dist. LEXIS 82286, 2013 WL 2666167, at *1 (W.D. Mo. June 12, 2013) (emphasis added).

Therefore, under Rule 17, and pursuant to this Court's prior holdings, Plaintiffs cannot proceed on behalf of their children unless and until they are judicially appointed to do so. On that basis alone, this Court cannot – and should not – enter an injunction in this case.

harm. At worst, it is a minor inconvenience. And, given the policy has been used on only one occasion, Plaintiffs' overwrought fears that their children will be unable to access certain books are unfounded and speculative, in the first instance. Under the circumstances of this case, Plaintiffs have failed to demonstrate the threat of irreparable harm to justify imposition of the dramatic remedy of an injunction.

### C. The Balance of Equities and Public Interest Favor Defendant.

As demonstrated above, Plaintiffs have not shown a fair chance of prevailing on the merits in this matter nor irreparable harm in the absence of relief. Even the plurality in *Pico* acknowledged that public school districts have wholly legitimate grounds for shielding their students from vulgar or educationally unsuitable library content outside of the curricular context. 457 U.S. at 871. While Plaintiffs might believe that the educational value of *Cats vs. Robots* is beyond any question or debate irrespective of student age and maturity, that alone is simply not enough to subsume the judgment and discretion of the District's democratically elected (and accountable) Board, much less deprive the District of the opportunity to assess the suitability of its library books at all. And Plaintiffs do not challenge the decision on *Cats vs. Robots*. In *C.K.-W*, Judge Schelp noted:

> As previously discussed, no one disputes that the District can remove books from its libraries for numerous reasons. And, therefore, policies providing for when and why books will be removed are necessarily allowable. The specifics of such a policy—especially where, like here, the policy is facially neutral—should not easily be second-guessed by a federal court.

*C.K.-W*, 2022 U.S. Dist. LEXIS 139554, at *30. (Ex. 2.) In sum, given that what is seen cannot be unseen, the balance of equities and the public interest under the specific facts of this case plainly weigh against the extraordinary remedy of a preliminary injunction that would unduly interfere with, and irrevocably prejudice, the District's broad and substantial discretion to inculcate community values in its schools and safeguard the wellbeing of all of its student.

16

Case 4:22-cv-00801-RK    Document 16    Filed 12/16/22    Page 16 of 18

## VII. Conclusion

As the court in the *C.K.-W* case concluded, Plaintiffs fail to satisfy the *Dataphase* factors and "it is not the function of the courts to make decisions that have been properly relegated to elected members of school boards" *Pico*, 457 U.S. at 921 (O'Connor, J., dissenting); *accord Reeder v. Kansas City Bd. of Police Comm'rs*, 796 F.2d 1050, 1055 (8th Cir. 1986) (explaining "the limitations of constitutional litigation" do not allow a court to judge "the wisdom or fairness" of a law because "wisdom, fairness, and policy of statutes" are not the business the courts).

Here, Plaintiffs' request for injunctive relief focuses on speculative hypothetical and mischaracterized concerns. Plaintiffs' Motion for Preliminary Injunction wholly fails to demonstrate that Plaintiffs are likely to prevail on the merits, that Plaintiffs will be irreparably harmed, or that the balance of equities or the public interest favors Plaintiffs. For all of the reasons above, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

EDCOUNSEL, LLC

By: */s/ J. Drew Marriott*
    J. Drew Marriott, #63059
    dmarriott@edcounsel.law
    Matthew D. Wilson #59966
    mwilson@edcounsel.law
    Ryan S. VanFleet, #64210
    rvanfleet@edcounsel.law
    201. N. Forest Ave., Ste. 200
    Independence, MO 64050
    (816) 252-9000
    (855) 252-9009 (facsimile)

ATTORNEYS FOR THE DEFENDANT
INDEPENDENCE SCHOOL DISTRICT

**CERTIFICATE OF SERVICE**

      I certify that the foregoing was filed and served upon all attorneys of record, through the Court's electronic filing and service system, on December 16, 2022.

                                                     */s/ J. Drew Marriott*
                                                   Attorney for Defendant