IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| L.H., D.J., B.P., and J.F., on behalf of their minor children, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 4:22-cv-00801-RK ) |
| INDEPENDENCE SCHOOL DISTRICT, | ) ) |
| Defendant. | ) |

**REPLY SUGGESTIONS IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

"Boards of Education . . . have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights." *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943). When books are removed from school libraries, even temporarily, "[w]hat is at stake is the right to receive information and to be exposed to controversial ideas–a fundamental First Amendment right." *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake*, 670 F.2d 771, 779 (8th Cir. 1982). ISD's policy of automatically removing books from library shelves upon any challenge violates students' First Amendment rights. Indeed, accepting ISD's arguments in opposition would require this Court to ignore binding circuit precedent regarding both preliminary injunctions in First Amendment cases and the right of students to receive information and ideas.

### I. Plaintiffs need only show that they have a fair chance of prevailing.

A party challenging a school board policy must demonstrate a fair chance of prevailing on the merits.[1] In support of their position that Plaintiffs must meet a higher burden to show they are likely to prevail on the merits, ISD cites only to the fact that the policy being challenged was enacted by an elected school board. However, school policies are not the type of "'governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes'" that are entitled to a higher degree of deference. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc) (reviewing a state statute, applying the higher standard, and quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).[2] The *Rounds* court further held that, "[o]nly in a case such as this one, where a preliminary injunction is sought to enjoin the implementation of a duly enacted statute, must district courts make a threshold finding that a party is likely to prevail on the merit." 530 F.3d at 732–33. In *Able*, the court applied the higher standard after noting that the challenged federal statute was passed following the "full play of the democratic process involving both the legislative and executive branches [that] produced a policy in the name of the public interest

---

[1] Even the Eastern District's decision cited by ISD ultimately reviewed the case using the fair chance standard. *See C.K.-W. v. Wentzville R-IV Sch. Dist.*, No. 4:22-cv-00191-MTS, 2022 WL 3138989, at *3 (E.D. Mo. Aug. 5, 2022).

[2] To counter circuit precedent that "[w]hen a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied," *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc), ISD relies on a misleading citation to *Rodgers v. Bryant* for the proposition that: "[A] preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits, even in First Amendment cases, and the district court must still consider the other factors[.]" *Rodgers v. Bryant*, 942 F.3d 451, 466 (8th Cir. 2019) (Stras, C.J., concurring in part and dissenting in part) (internal citations and quotations omitted). ISD, however, quotes from the dissent. The *Rodgers* majority <u>confirmed</u> the controlling standard: once plaintiffs have "established that the law likely violates the First Amendment," they are deemed to "have satisfied the remaining three *Dataphase* factors as well." 942 F.3d at 457 (citing *Swanson*, 692 F.3d at 870); *see also, e.g.*, *Willson v. City of Bel-Nor*, 924 F.3d 995, 1004 (8th Cir. 2019) (reversing denial of preliminary injunction against municipal ordinance and concluding "Willson is likely to succeed on the merits of his First Amendment challenge[; t]he preliminary injunction should be granted," without analysis of the remaining *Dataphase* factors).

embodied in a statute and implementing regulations." 44 F.3d at 131. The *Able* court also distinguished the law at issue there from cases where the less-rigorous fair-chance standard had been applied and noted that the federal statute had been passed after "Congress and the President engaged in lengthy public debate before formulating the new 'Don't Ask, Don't Tell' policy and enacting and signing the legislation implementing it." *Id.* (citing and distinguishing *Haitian Centers Council, Inc. v. McNary*, 969 F.2d 1325, 1338–39 (2d Cir. 1992), *vacated as moot*, 509 U.S. 918 (1993), a case where the "challenged action [was] taken pursuant to INS policy formulated solely by the executive branch"; and *Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980), a case that "involved methods adopted by the Census Bureau altogether outside of a regulatory framework").

A school policy is not comparable to a statute and it does not involve the "'full play of the democratic process.'" *D.M. by Bao Xiong v. Minn. State High School League*, 917 F.3d 994, 1000 (8th Cir. 2019) (quoting *Rounds*, 530 F.3d at 732, and finding that a high school athletic league's rule was not based on the "'presumptively reasoned democratic process'" that *Rounds* contemplated). In *D.M. by Bao Xiong*, the court found that the passage of a school league rule (referred to in the case as a bylaw), had "no lengthy public debate involving both the legislative and executive branches before the formulation of the bylaw and its subsequent enactment." 917 F.3d at 1000. The fact that a school policy is adopted by an elected board does not change the analysis. *See Brooks v. Francis Howell Sch. Dist.*, — F.Supp.3d —, No. 4:22-cv-00169-SRC, 2022 WL 1185147, at *4–5 (E.D. Mo. Apr. 21, 2022) (applying the fair-chance standard to a school policy challenged under the First Amendment, citing *Rounds*, *Able*, *Hatian Centers Council*, *Carey*, and *D.M. by Bao Xiong*, and noting that "unlike federal, state, and municipal governments, the board has no horizontal separation of powers; that is, the board is a

3

policymaking body unto itself, without the check or balance that the executive branch serves for the legislative, and vice versa," and finding that "the board's actions do not involve 'the full play of the democratic process'" (citation omitted)); *see also McKinney v. Huntsville Sch. Dist.*, 350 F. Supp. 3d 757, 764–65, (W.D. Ark. 2018) (applying the fair-chance standard in a case challenging a board-approved 365-day expulsion); *see also Parents, Fams., & Friends of Lesbians & Gays, Inc. v. Camdenton R-III Sch. Dist.*, 853 F. Supp. 2d 888, 895 (W.D. Mo. 2012) (applying fair-chance standard to preliminarily enjoin a school district policy).

**II.    Applying binding Eighth Circuit precedent, Plaintiffs are likely to succeed on the merits.**

ISD's policy "directly and sharply implicate[s] basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968) (noting further that "the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools" and striking down a law prohibiting the teaching of evolution as violation of First and Fourteenth Amendments (citation and quotation marks omitted)). And, although *Pico* was a plurality opinion, Supreme Court guidance is nonetheless instructive. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982). If there is no clear majority, "the holding of the [Supreme] Court may be viewed as that position taken by those Members who concurred . . . on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). "Justice White's concurrence in *Pico* represents the narrowest grounds for the result in that case, and it does not reject the plurality's assessment of the constitutional limitations on school officials' discretion to remove books from a school library." *Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 189 (5th Cir. 1995). ISD relies on the Eastern District's decision in *C.K-W.*[3] and selectively cited out-

---

[3] *C.K-W.* was wrongly decided, but it also used fact-specific analysis related to the ultimate removal of several books, which is not present in this case. The challenge here is also much narrower than in *C.K-W.*

4

of-circuit cases instead of acknowledging Eighth Circuit precedent (which it ignores entirely) establishing that the First Amendment right of students to receive ideas and information must be recognized.[4] This Court should follow *Pratt*'s acknowledgment of the "fundamental First Amendment right" at issue here, 670 F.2d at 779, rather than ISD's non-binding cases.

*Pratt* held that a school district violated the students' First Amendment right to receive information and be exposed to ideas by removing a film adaptation and trailer of Shirley Jackson's short story "The Lottery." The Court adopted the framework used in challenges to the removal of books from school libraries, including the Second Circuit's in *Pico*, "because the effect of banning the films due to their ideological and religious content is the same as the effect of removing books from a library….[T]he action of the school officials clearly indicates that the ideas contained in the banned materials are unacceptable and, hence, the exercise of First Amendment freedoms is inhibited." *Pratt*, 670 F.2d at 776 n. 6; *accord Parents, Fams., & Friends of Lesbians & Gays, Inc. v. Camdenton R-III Sch. Dist.*, 853 F. Supp. 2d 888 (W.D. Mo. 2012) ("*PFLAG*") (applying *Pratt* and finding a violation of students' First Amendment rights). The Eighth Circuit's holding in *Pratt* explicitly relied on the Second Circuit's legal conclusions in *Pico*, which was affirmed by a five-Justice majority. Even a summary affirmance by the

---

[4] None of the out-of-circuit cases address an automatic removal of school library material based on any objection for any reason. *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1218 (11th Cir. 2009), allowed removal of a book that was determined to contain "factual inaccuracies" from a school library. *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1046 (5th Cir. 1982) (en banc), concerned local access television programming, with the court specifically noting that "[t]he right to cancel a program is, furthermore, far more integral a part of the operation of a television station than the decision to remove a book from a school library." *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005), involved textbooks, not library books, a distinction recognized by *Pratt*, 670 F.2d 775. Indeed, the most pertinent Fifth Circuit case is *Campbell v. St. Tammany Par. Sch. Bd*., 64 F.3d 184 (5th Cir. 1995), in which the court "disagree[d] with the School Board's contention that we are bound to reject the guidance found in *Pico* because of our *en banc* opinion in *Muir*," and applied *Pico* after concluding that "[e]ven though the constitutional analysis in the *Pico* plurality opinion does not constitute binding precedent, it may properly serve as guidance in determining whether the Board's removal decision was based on unconstitutional motives." *Id*. at 188–89.

5

Supreme Court is a judgment on the merits. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975). The Supreme Court itself has cited to *Pico* repeatedly. *See, e.g.*, *Nurre v. Whitehead*, 559 U.S. 1025 (2010) (citing *Pico*, 457 U.S. at 871–872) ("And our cases categorically reject the proposition that speech may be censored simply because some in the audience may find that speech distasteful."); *accord Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 570 (1998).

Students' First Amendment rights are implicated even if the removal of a book is only temporary. "The right to read a book is an aspect of the right to receive information and ideas, an 'inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution.'" *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 999 (W.D. Ark. 2003), *quoting Pico*, 457 U.S. at 867. *Pico* continues:

> First, the right to receive ideas follows ineluctably from the sender's First Amendment right to send them: 'The right of freedom of speech and press ... embraces the right to distribute literature, and necessarily protects the right to receive it.' *Martin v. Struthers*, 319 U.S. 141, 143 (1943) (citation omitted). 'The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers.' *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) (Brennan, J., concurring).

457 U.S. at 867; *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (citing *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938)) ("the constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication"). Reading a book and receiving the ideas contained therein is an expressive activity. Students who would express themselves by choosing to read certain books and engage with diverse ideas, information, and viewpoints cannot do so if those books are automatically removed from library shelves and circulation pursuant to ISD policy. *Pratt* and *Pico* establish the constitutional right implicated by the challenged policy. This case and the request for interim injunctive relief targets the

6

automatic-removal policy only. It is not about ISD's curricular decisions nor its policy for reviewing books prior or subsequent to their inclusion in its library collection.

    III.    **Plaintiffs have a fair chance of demonstrating the automatic-removal policy is unconstitutional, and a preliminary injunction is appropriate under the circumstances.**

Even when government officials "possess[] legitimate power to protect children from harm,… that does not include a free-floating power to restrict the ideas to which children may be exposed." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794 (2011) (internal citations omitted). ISD's automatic-removal policy—which requires almost immediate removal of any challenged book—creates a heckler's veto that allows viewpoint-based objections to remove from students access to particular ideas because one person finds them disagreeable. Here, as in *Pico*, ISD's "removal procedures were highly irregular and ad hoc—the antithesis of those procedures that might tend to allay suspicions regarding petitioners' motivations." *Pico*, 457 U.S. at 875. It is undisputed that ISD enforces, and will continue to enforce, its policy allowing any person to file a challenge to any book that they find objectionable in any manner and requiring school officials to immediately and automatically block access to the challenged material.

"A 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion)). ISD does not dispute that its policy removes books from library shelves almost immediately upon receipt of a complaint, that the book remains inaccessible to every student in the district while it is reviewed by a committee and the school board, and that this occurs without any notice to students or parents about a removal or the outcome of the committee review and board vote. Indeed, students and parents have no opportunity to contest a decision if they happen to learn

about it. The policy itself recognizes that it will cause the removal of books that ought not be removed, providing that books will be returned if they survive review.

The automatic-removal policy is a heckler's veto. "The first amendment knows no heckler's veto." *Lewis v. Wilson*, 253 F.3d 1077, 1082 (8th Cir. 2001); *see also Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 135 (1992) ("Regulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."); *Robb v. Hungerbeeler*, 281 F. Supp. 2d 989, 1002 (E.D. Mo. 2003), *aff'd*, 370 F.3d 735 (8th Cir. 2004) (finding that the Ku Klux Klan's "expressive speech of picking up trash along a highway right-of-way cannot be trumped because some people may disagree with its beliefs and advocacy"); *Sund v. City of Wichita Falls*, 121 F. Supp 2d 530, 549 (N.D. Tex. 2000) (applying heckler's veto doctrine in library context where complainants could "veto lawful, fully-protected expression simply because of their adverse reaction to it"). Here, a heckler's veto occurs because the policy requires school officials to remove access to a book because of any challenger's adverse reaction to the book's content. Access is removed despite the fact that the library collection is constituted of materials carefully selected by trained librarians and school officials and therefore they have *already* been deemed appropriate for students.

The policy also constitutes a prior restraint. ISD's suppression of students' rights to access ideas and information by automatically removing books from shelves upon challenge amounts to a prior restraint. *See, e.g.*, *U.S. v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 470 (1995) (reasoning that a "large-scale disincentive to Government employees' expression also imposes a significant burden on the public's right to read and hear what the employees would otherwise have written and said"); *accord Mainstream Loudoun v. Bd. of Trustees of Loudoun Cty. Libr.*, 24 F. Supp. 2d 552, 569 (E.D. Va. 1998) (finding that library internet filtering policy

8

Case 4:22-cv-00801-RK   Document 20   Filed 12/30/22   Page 8 of 12

that blocked patrons from accessing certain websites and characterized as a removal decision constitutes an unconstitutional prior restraint). Here, like in *Bantam*, the government denies students access to publications deemed "'objectionable' without further elucidation." *Id.* at 71. Indeed, ISD has found the materials *not objectionable* when including them in the collections but automatically removes access because any challenger disagrees for any personal reason.

ISD's policy causes irreparable harm because it immediately blocks access to library material when any one parent, guardian, or student claims to finds it objectionable in any manner. In addition to the First Amendment injury caused by an even-temporary restriction, the policy also violates students' due process rights by stripping them of access without notice.[5] ISD confirms that the automatic-removal of any challenged material will continue absent an injunction; this admission demonstrates a credible threat that the policy will be enforced in a way that Plaintiffs allege violates their constitutional rights. *See Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (finding irreparable harm sufficient for injunction where school uniform policy was used on one occasion to discipline students because of viewpoint); *see also Blue Moon Ent., LLC v. City of Bates City, Mo.*, 441 F.3d 561, 565 (8th Cir. 2006) ("The loss of First Amendment freedoms, even for the period required to litigate a facial challenge, may constitute an irreparable injury.").

The balance of equities and the public interest will be served by a preliminary injunction. ISD does not dispute that it has abided by its selection criteria to determine library materials are appropriate before their inclusion in the library collection. Thus, leaving challenged materials in place while they are reviewed—as almost every school district does—is extremely unlikely to harm ISD or anyone else. Nor will this limited injunction interfere in any way with how ISD

---

[5] The lack of notice supports a finding of irreparable harm because it prevents Plaintiffs from obtaining relief from this Court before another book is automatically removed.

selects library materials in the first place, removes items from circulation for routine reasons (e.g., the book is worn or its content out-of-date), decides what materials to include in its curriculum, or conducts the review of any challenged library material. ISD cannot show it is harmed by holding its hand upon receipt of a complaint yet still allowing the review process to play out and determine whether the material should ultimately be removed.

The issue here is the First Amendment right of access recognized in this circuit since *Pratt*. "[I]t is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022) (quoting *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019)). ISD does not articulate how the public interest is advance by allowing it to automatically remove access to library materials upon complaint that have been previously deemed appropriate before the materials are reviewed.

## IV. Conclusion

Plaintiffs' requested relief is modest.[6] The policy to remove previously approved library materials upon a single complaint exists, has been enforced, and will, by ISD's own admission, continue to be enforced in the same way in the future. For the foregoing reasons, this Court should grant a preliminary injunction enjoining ISD from enforcing its policy of removing library materials based on any challenge before a review and final board determination has been completed.

---

[6] If this Court concludes that Rule 17(b) does not permit the minors' parents to file on their behalf without separately being appointed to serve as their representative, Plaintiffs seek leave to file a motion for such appointment.

Respectfully submitted,

/s/ Gillian R. Wilcox
Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 West 34th Street, Ste. 420
Kansas City, Missouri 64111
Phone: 816/470-9938
Fax: 314/652-3112
gwilcox@aclu-mo.org

Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Ste. 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
jsteffan@aclu-mo.org

**Attorneys for Plaintiffs**

## Certificate of Service

I certify that a copy of the foregoing was electronically filed and served on all counsel of record.

/s/ Gillian R. Wilcox