IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| L. H., ON BEHALF OF THEIR MINOR CHILDREN; D. J., ON BEHALF OF THEIR MINOR CHILDREN; B. C., ON BEHALF OF THEIR MINOR CHILDREN; AND J. F., ON BEHALF OF THEIR MINOR CHILDREN;<br><br>Plaintiffs,<br><br>v.<br><br>INDEPENDENCE SCHOOL DISTRICT,<br><br>Defendant. | Case No. 4:22-cv-00801-RK |

## ORDER

Plaintiffs are parents of minor children who are students in the Independence School District and filed this case on behalf of their minor children on December 6, 2022. (Doc. 1.) Plaintiffs challenge the policy of Defendant Independence School District that removes material in school libraries upon receipt of a challenge to such material pending a formal review process. Plaintiffs claim the policy violates the minor children's rights under the First Amendment and Fourteenth Amendment. Specifically, Plaintiffs assert that the policy is unconstitutional due to its automatic application; lack of notice to students before, during, and at the end of the formal review process; and lack of opportunity for appeal.

Before the Court is Plaintiffs' motion for preliminary injunction. (Doc. 4.) The motion is fully briefed. (Docs. 8, 16, 20.) As explained more fully below, because Plaintiffs fail to show a fair chance of prevailing on the merits of their claims and fail to show a threat of irreparable harm, Plaintiffs' motion for preliminary injunction is **DENIED.**

## Background

Plaintiffs are parents who filed this case in a representative capacity on behalf of their minor children, the real parties in interest, who are students in the Independence School District. (Doc. 1 at ¶ 2.) Defendant Independence School District ("District") has a regulation, Board Regulation 6310, which, among other things, allows a student, parent, or guardian to make a formal complaint against library materials they find objectionable on a form obtained from the

Superintendent's office. (*Id.* at ¶ 26; Doc. 1-2 at 3.) Board Regulation 6310 provides that the complaint will be considered by the Superintendent and librarian, and, "[c]ontingent with their decision, the material will be returned to the shelf for continued use, or removed from library circulation." (Doc. 1-2 at 3.) Board Regulation 6310 refers to Policy and Regulation 6241 – Controversial Materials. (*Id.*)

> Board Regulation 6241 provides, among other things:
>
> Despite the care taken to select those materials deemed to be educationally useful, occasional objections to the selection of instructional materials may be made by the public.
>
> If a challenge is made, it should be properly channeled through guidelines and procedures established by the Board.
>
> On occasion, honest differences of opinion may arise about books or materials used in the public schools. In order to handle questions that might arise in an impartial and orderly manner, the following procedures shall be followed:
>
>> 1. All complaints shall be reported immediately to the building principal involved, whether these come by telephone, letter, or personal conference.
>>
>> 2. The person making the complaint shall receive the form "Review of Instructional Materials." A copy of this form may be picked up in the administrator's office.
>>
>> 3. This form must be completed and returned by the person making the complaint.
>>
>> 4. Media being questioned will be removed from use, pending committee study and final action by the Board of Education, unless the material questioned is a basic text.[1]
>>
>> 5. The Superintendent of Schools shall, within fifteen (15) days of receipt of the written request, appoint a review committee of nine people. The committee shall consist of the administrator of the building involved, three teachers, a member of the Board of Education, and four lay persons. The administrator shall serve as secretary.
>>
>> 6. The classroom teachers appointed shall be represented by the grade level or subject area where the media is used, another grade level or subject area, and a librarian.
>>
>> 7. The four lay persons appointed shall be selected from a list of eight people recommended to the Superintendent by the president of the Board of Education.

---

[1] This is the automatic-removal policy that Plaintiffs challenge as unconstitutional in their complaint. (Doc. 1 at ¶ 31.iv n.1.)

2

> Two of the four persons appointed must be parents/guardians of children in the schools.
>
> 8. Within twenty (20) days of the appointment of the committee, the committee shall meet, review the written request for reconsideration, read the questioned materials, evaluate, and prepare a written report of its findings and recommendations to the Superintendent of Schools.
>
> 9. The committee may recommend that the questioned materials be:
>
>> a. Retained without restriction;
>>
>> b. Retained with restriction; or
>>
>> c. Not retained.
>
> 10. The Superintendent shall, at the next appointed meeting of the Board of Education, report the recommendations of the Review Committee to the Board of Education. The decision of the Board will be final.
>
> 11. The decision of the Board shall be reported to the principal of the school, to the complainant, and to other appropriate professional personnel on the next school day. The principal shall see that the decision of the Board is carried out.
>
> 12. The librarian responsible for that school shall keep on file all pertinent information concerning the questioned materials or any books or materials likely to be questioned.

(Doc. 1-5 at 1-2.)

Under the District's policies and regulations, there is no notice to students or parents when materials are challenged and no mechanism for appealing the final Board decision as to whether material is returned to circulation or permanently removed. (Doc. 1 at ¶ 32.)

On December 16, 2022, Plaintiffs filed their complaint, containing two counts brought pursuant to 42 U.S.C. § 1983. In Count I, Plaintiffs claim that the District's automatic-removal policy violates the minor students' rights under the First Amendment of the United States Constitution by removing all student access to all challenged materials, including where removals are made without merit and on the basis of viewpoint and content. (*Id.* at ¶ 63.) In Count II, Plaintiffs claim the automatic-removal policy violates the minor students' Fourteenth Amendment due process rights to notice and an opportunity to be heard as to the deprivation of their First Amendment rights implicated in Count I. (*Id.* at ¶¶ 72-73.) Plaintiffs' complaint seeks a preliminary injunction, as well as a corresponding permanent injunction and declaratory judgment, directing the District to cease enforcing its policy of automatically removing materials upon

3

challenge as it allegedly violates "students' First and Fourteenth Amendment right to access ideas and information and due process[.]" (*Id.* at 14.)

Plaintiffs filed their Rule 65(a) motion for preliminary injunction the same day as their complaint, requesting that Defendant be prohibited from enforcing its policy of automatically removing library materials from student access upon receiving a challenge to such material, while this lawsuit is determined on the merits.[2] (Doc. 4.) Plaintiff asserts "the request for interim injunctive relief targets the automatic-removal policy only. It is not about [Defendant's] curricular decisions nor its policy for reviewing books prior or subsequent to their inclusion in its library collection." (Doc. 20 at 6-7.)

**Standing**

Standing is a threshold or jurisdictional issue. *See Cook v. ACS State & Local Sols., Inc.*, 756 F. Supp. 2d 1104, 1106 (W.D. Mo. 2010). A district court does not have subject matter jurisdiction when a plaintiff lacks standing. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).

Defendant argues that Plaintiffs cannot proceed on behalf of their children unless and until they are judicially appointed to do so under Rule 17, consistent with this Court's prior holdings, citing *Flowers v. United States*, No. 17-01028-CV-W-LMC, 2020 WL 7974287, at *1 (W.D. Mo. Oct. 13, 2020) and *Elmore v. Mansfield*, No. 3:11-CV-5088-DGK, 2013 WL 2666167, at *1 (W.D. Mo. June 12, 2013). (Doc. 16 at 15 n.5.)

Rule 17(a) provides that guardians "may sue in their own names without joining the person for whose benefit the action is brought[.]" Fed. R. Civ. P. 17(a)(1)(C). Defendant's argument and authority are specific to the context of an individual who is not acting in such representative capacity as otherwise allowed under Rule 17(a)(1)(C). Fed. R. Civ. P. 17(b)(1); *Flowers*, 2020 WL 7974287, at *1 (in the context of "Rule 17(b) of the Federal Rules of Civil Procedure, an individual's capacity to sue is determined by the individual's domicile. Fed. R. Civ. P. 17(b)(1)."); *Elmore*, 2013 WL 2666167, at *1 ("Federal law looks to state law for the standard governing the approval of a minor settlement.")

The Court finds in the context of this case, Plaintiffs are undisputedly the guardians of the real parties in interest – the minor students. Thus, under Rule 17(a)(1)(C) Plaintiffs may act in a

---

[2] Plaintiffs specify that their challenge does not implicate the District's curricular decisions or its policy for reviewing books prior or subsequent to their inclusion in its library collection. (Doc. 20 at 7.)

4

representative capacity on behalf of their minor children and as such may sue in their own names without joining their children for whose benefit the action is brought. In short, Plaintiffs do not lack standing.

## Legal Standard

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (internal quotation omitted). The Eighth Circuit considers motions for preliminary injunctions based on the following factors: (1) the threat of irreparable harm to the plaintiff, (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties, (3) the probability the plaintiff will succeed on the merits, and (4) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

## Analysis

### I. The Likelihood of Success on the Merits Favors Denying the Motion

When the movant seeks "to enjoin something other than government action based on presumptively reasoned democratic processes," the movant must establish a "fair chance of prevailing."[3] *Barrett v. Claycomb*, 705 F.3d 315, 321 (8th Cir. 2013) (internal quotation omitted).

---

[3] Defendant argues that Plaintiffs must show they are "likely to prevail on the merits" – the showing that is required when a party seeks to enjoin "government action based on presumptively reasoned democratic processes," citing *Planned Parenthood Minnesota., North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc) – because "Policy 6241 was formally enacted, with notice and comment, by a democratically elected Board of Education." (Doc. 16 at 8.) The Court is hesitant to agree. *See Brooks v. Francis Howell Sch. Dist.*, 599 F. Supp. 3d 795, 802 (E.D. Mo. 2022) ("unlike federal, state, and municipal governments, the board has no horizontal separation of powers; that is, the board is a policymaking body unto itself, without the check or balance that the executive branch serves for the legislative, and vice versa."); *but see C.K.-W. by & through T.K. v. Wentzville R-IV Sch. Dist.*, No. 4:22-CV-00191-MTS, 2022 WL 3138989, at *3 (E.D. Mo. Aug. 5, 2022) (applying the "fair chance" standard rather than the "likely to prevail on the merits" standard without deciding the appropriate standard) (citing *Brooks*, 599 F.Supp.3d at 801-02 (using "fair chance" analysis after concluding school board's action did not involve "the full play of the democratic process"); contrasting *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 775 (8th Cir. 2012) (noting district court observed that plaintiff "needed to show a 'fair chance' of success on the merits" in challenge to a school district policy but otherwise not discussing "fair chance" and simply concluding that plaintiffs were "unlikely to succeed on the merits"); *Kroupa v. Nielsen*, 731 F.3d 813, 815, 818 (8th Cir. 2013) (emphasizing that the "secret deliberations" of a "secret" and "undisclosed" committee of a state university were not government action based on presumptively reasoned democratic processes); *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 999-1001 (8th Cir. 2019) (using "fair chance" analysis in challenge to by-laws of a state's high school athletic league because "the full play of the democratic process" was not involved in creating the by-laws since they were "created by League-member schools throughout the state, not by democratically elected officials who must answer to their constituents or face the possibility of not being reelected")).

5

"[T]he likelihood of success on the merits is [the] most significant" factor, and "[t]o that end, the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." *Id.* at 320 (internal quotations omitted). "Generally, if a party shows a 'likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are . . . deemed to have been satisfied.'" *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (quoting *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc)). Still, "[a]s a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a[n adequate] likelihood of success on the merits." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018).

Plaintiffs here assert their minor children, as students in public school, have a fundamental right under the First Amendment of the United States Constitution to receive ideas and information from the school district's libraries, citing heavily to *Pratt v. Independent School District No. 831, Forest Lake, Minnesota*, 670 F.2d 771 (8th Cir. 1982) and the plurality opinion of Justice Brennan in *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853 (1982), "a case that sharply divided the Supreme Court and that produced seven opinions, none of which garnered a majority." *C.K.-W. v. Wentzville R-IV Sch. Dist.*, No. 4:22-CV-00191-MTS, 2022 WL 3138989, at *4 (E.D. Mo. Aug. 5, 2022). Specifically, Plaintiffs contend that *Pratt* and *Pico* establish the constitutional right implicated by the challenged automatic-removal policy. (Doc. 20 at 6.)

In considering the parties' arguments in this case, the Court finds persuasive the Eastern District's reasoned assessment in *C.K-W. v. Wentzville R-IV School District* as to the impact of *Pico*.[4] The Court is bound by the "position taken by those Members [of the Supreme Court] who concurred in the judgments on the narrowest grounds." *C.K.-W.*, 2022 WL 3138989, at *4 (quoting *Jones v. Jegley*, 947 F.3d 1100, 1106 n.3 (8th Cir. 2020). As such, Justice White's opinion controls. *See Pico*, 457 U.S. at 883 (White, J., concurring in the judgment); *see also Griswold v.*

---

However, because the Court concludes that Plaintiffs do not meet even the less rigorous "fair chance of prevailing" standard, the Court will use the "fair chance" standard without deciding which standard should apply here. *C.K.-W.*, 2022 WL 3138989, at *4 (citing *Rounds*, 530 F.3d at 736 (noting that movant could not meet "even the less rigorous requirement to show a fair chance of prevailing, much less the more rigorous requirement . . . that it is likely to prevail, on the merits of its claim"); *Barrett*, 705 F.3d at 321 n.4 (refraining from resolving which standard applied in case challenging policy implemented by a state college because the court would reach the same conclusion regardless of the standard applied)).

[4] The Court was persuaded by much of the rationale set out in *C.K.-W.*, and portions of *C.K.-W.* are adopted without further attribution.

*Driscoll*, 616 F.3d 53, 57 (1st Cir. 2010) (explaining, "Justice White concurred in [*Pico's*] judgment without announcing any position on the substantive First Amendment claim"); *Muir v. Ala. Educ. Television Comm'n*, 688 F.2d 1033, 1045 n.30 (5th Cir. 1982) (en banc) (finding Justice White's opinion had the narrowest grounds for the judgment and therefore concluding the Supreme Court did not decide in *Pico* either the "extent" or even the "existence" of "First Amendment implications in a school book removal case").

The Eighth Circuit's decision in *Pratt* held that a school board could not constitutionally ban films from its curriculum based on the objection of a majority of its members to the religious and ideological content of the films and their wish to prevent the ideas in the film from being expressed in the school. 670 F.2d at 773. The *Pratt* decision, however, was issued prior to the Supreme Court's judgment in *Pico*, and is most in line with Justice Brennan's plurality opinion in that later case, which was not the position taken by the justices who concurred in the judgments on the narrowest grounds. Nonetheless, as the Eastern District did in *C.K.-W.*, the Court will assume without adopting "this most expansive view of the purported right at play, this First Amendment right to receive ideas[.]" 2022 WL 3138989, at *5.

Even under that view, "local school boards have 'a substantial legitimate role to play in the determination of school library content' and . . . districts have 'significant discretion' to determine the books available in school libraries." *Id.* (quoting *Pico*, 457 U.S. at 869-70). Such discretion is limited and "may not be exercised in a narrowly partisan or political manner[,]" the focus being on the "motivation behind" the action. *Id.* (quoting *Pico*, 457 U.S. at 870-71). The removal of materials from a school library violates the First Amendment under this expansive view only where the removal decision is made with intent to deny students access to ideas with which the deciding officials disagree, and when such intent was the decisive factor in the removal decision. *Id.*

Here, Plaintiffs have failed to show that they have a fair chance of success on their argument that the automatic-removal policy is constitutionally infirm. Schools may remove books from their libraries for a multitude of reasons, and as such, schools may have policies that allow for the removal of books. "Their decisions on how and when to remove books is entitled to substantial deference." *Id.* at *7 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988)). The idea that the District's policy set out in Regulation 6310 and Regulation and Policy 6241, providing for temporary removal a book upon receipt of a complaint until the District

determines whether to retain the book, is unconstitutional is not consistent with the expansive view of the right articulated by the plurality in *Pico* or the Eighth Circuit in *Pratt*. In particular:

> The *Pico* plurality recognized an amorphous, but circumscribed, right to receive information in a school setting, but it tied the scope of the right exclusively to the conduct of the school officials. School officials cannot remove materials if the decisive factor for the removal was to deny students access to ideas. *Pico*, 457 U.S. at 871 ("[W]hether petitioners' removal of books from their school libraries denied respondents their First Amendment rights depends upon the motivation behind petitioners' actions."). A policy that requires the temporary removal of any material anytime the District receives a complaint (which people of any race, religion, gender, sexual orientation, and political or world view may file) necessarily would not impute a motive on the District. When the District temporarily removes all complained-of books, and does so evenhandedly, it necessarily cannot be removing them with the intent to deny students access to ideas with which the District disagrees.

*C.K.-W.*, 2022 WL 3138989, at *7-8.

Further, Plaintiffs' arguments that the policy creates a heckler's veto and constitutes a prior restraint are misplaced. "Both a heckler's veto and a prior restraint involve the freedom of speech and expression, not the right of access to particular ideas. Neither concept translates well from the freedom of speech and expression arena to this right of access to particular ideas." *Id.* at *8.

The Eastern District's explanation is equally applicable here:

> A heckler's veto is the "government's restriction or curtailment of a speaker's right to freedom of speech when necessary to prevent possibly violent reactions from listeners." Heckler's Veto, Black's Law Dictionary (11th ed. 2019); *accord Roe v. Crawford*, 514 F.3d 789, 796 n.3 (8th Cir. 2008) (describing it as "situations in which the government attempts to ban protected speech because it might provoke a violent response"). Plainly, that is not what is happening here. This is the case of the government (in the form of a school district) temporarily removing access to particular materials to determine whether they are appropriate for children. In doing this, it is not banning protected speech. And no one argues it removed these books because it feared they would provoke a violent response. This is not a case of a heckler's veto.
>
> Nor is the District's policy an unconstitutional prior restraint. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotations omitted). Once again, that plainly is not this policy. This policy does not prohibit communications. True, at issue here is the First Amendment, which provides for the freedom of speech. But at issue here is the amorphous right of students to receive information, which has been synthesized from the First Amendment as an "inherent corollary of the rights of free speech and

8

> press." *Pico*, 457 U.S. at 867. Here, the District is not forbidding anyone from any speech, and Plaintiffs provide no precedent or coherent argument why a prior restraint—and a temporary one, at that—on a student's right to access information in the form a particular book or material would violate the First Amendment. And even if this policy were a prior restraint, Plaintiffs have not demonstrated why it would be unconstitutional, as prior restraints on speech are not always unconstitutional in a public school setting. *Kuhlmeier*, 484 U.S. at 268-69; *Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist.*, 200 F.3d 1128, 1134 (8th Cir. 1999).

*C.K.-W.*, 2022 WL 3138989, at *8. In short, Plaintiffs fail to show even a fair chance of success on their First Amendment claim that the District's automatic-removal policy is unconstitutional, even under the expansive view of the right articulated by the plurality in *Pico* or the Eighth Circuit in *Pratt*.

Correspondingly, Plaintiffs also fail to show a fair chance of success on their Fourteenth Amendment Due Process claim. The Fourteenth Amendment's Due Process Clause provides that, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000). Because the Court finds Plaintiffs do not have a fair chance of prevailing on their claim of deprivation of the liberty interest alleged, Plaintiffs' Fourteenth Amendment Due Process claim also does not have a fair chance of success, and the Court need not reach the second step of the procedural due process analysis

Because Plaintiffs have not established a "fair chance of prevailing" on the merits of their claims, and this "is [the] most significant" factor, these findings "strongly suggest[] that preliminary injunctive relief should be denied." *Barrett*, 705 F.3d at 320 (internal quotations omitted).

## II. Plaintiffs Have Not Demonstrated a Threat of Irreparable Harm

The basis of Plaintiffs' argument as to irreparable harm is that "a 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (Doc. 8 at 28) (quoting *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013)). Here, however, the Court has found that Plaintiffs have not established they have a

fair chance of prevailing on their claim that the policy at issue results in a loss of First Amendment freedoms. As such, Plaintiffs fail to show the threat of irreparable injury that they assert.[5]

The Eighth Circuit has explained that in the context of a motion for preliminary injunction, a "threshold inquiry is whether the movant has shown the threat of irreparable injury" and "the movant's failure to sustain its burden of proving irreparable harm ends the inquiry and the denial of the injunctive request is warranted." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991) (cleaned up).

The Court finds Plaintiffs have not established the irreparable harm element of the required showing for a preliminary injunction.[6]

## Conclusion

Plaintiffs have not clearly carried their burden of persuasion showing the extraordinary and drastic remedy of a preliminary injunction should be granted in this case. Accordingly, and after careful consideration, Plaintiffs' motion for preliminary injunction is **DENIED**.

**IT IS SO ORDERED**.

                                                                s/ Roseann A. Ketchmark
                                                                ROSEANN A. KETCHMARK, JUDGE
                                                                UNITED STATES DISTRICT COURT

DATED: February 23, 2023

---

[5] Also notable, in the ten years that Policy 6241 has been in place, the District has received a single challenge to a single book. After review, the District's Board did not vote to permanently remove that book from its libraries, but rather voted only to restrict the book to middle school and high school libraries. (Doc. 16 at 15.)

[6] Ex gratia, the Court finds Defendant's arguments and cited authorities persuasive and agrees that the public interest and balance of equities favor denying Plaintiff's motion for preliminary injunction.